Board of Examiners in Medicine of the State of

Rhode Island *vs.* Charles Jacobson.

June 7, 1945.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a proceeding brought by the board of examiners in medicine of the state of Rhode Island, in accordance with general laws 1938, chapter 275, §5, as amended by public laws 1939, chapter 660, sec. 190, to revoke, on the ground that its issuance was fraudulently procured by the appellant, a certain so-called "Duplicate" certificate of authority to practice medicine in this state, issued by the board to him on September 14, 1936.

The proceeding was heard before the board after due notice to the appellant; and as a result of the hearing an order was entered by the board revoking the certificate, on the ground stated. Notice of the entry of this order was given to the appellant and he duly took an appeal therefrom to this court, in which the hearing must be *de novo*. See *Knoop* v. *State Board of Health,* 41 R. I. 283, and *State Board of Health* v. *Roy,* 22 R. I. 538. As to this there is no dispute between the parties.

The matter was accordingly thus heard before us, testimony being taken and other proper evidence submitted. It is contended before us in behalf of the appellant that we

could not properly hear and decide this appeal, for the reason that in the hearing before the board of examiners there was not a sufficient specification of the fraud with which the appellant was charged to have been guilty in procuring the so-called duplicate certificate.

In support of this contention the appellant relies upon the opinion of this court in the case of *Narragansett Racing Assoc., Inc.* v. *Kiernan,* 59 R. I. 79. The proceeding before us in that case, however, was one in *certiorari* to review a decision and order made by the division of horse racing of this state. Such a proceeding differs so radically from a hearing *de novo* that in our opinion that case gives no support to this contention of the appellant. Upon the record here the board clearly had jurisdiction under G. L. 1938, chap. 275, §5, as amended by P. L. 1939, chap. 660, sec. 190. See *Round* v. *Manning,* 69 R. I. 354, at 358. We find no merit in the contention.

The appellant testified before us that this certificate, which is signed "Edward A. McLaughlin, M. D. Director of Public Health" of this state, is a duplicate of a similar certificate, which he testified was issued to him by that department on October 11, 1934, after he had taken and passed successfully an examination for such a certificate before the state public health commission on October 4 and 5, 1934, but which, he testified, was afterwards lost or destroyed. The contention of the complainant board, supported by evidence, is that he never took such an examination and that he obtained by fraud the so-called duplicate certificate.

The evidence, however, discloses a chain of facts and circumstances which lead to the conclusion that the appellant, through fraud or deception, obtained his certificate to practice medicine in this state. It will suffice to point out some of these facts.

At the outset it is significant to note that, at the time of the examination in question and according to the rules of the department of public health then in force, the medical college from which the appellant graduated was not recog-

nized as an approved college whose graduates were considered as qualified to take the examination to practice medicine in this state; and there is no evidence that such requirement had been waived in favor of the appellant to permit him to take that examination.

Among the exhibits introduced in evidence are papers contained in six manila envelopes, numbered 2193 to 2198, inclusive, taken from the files of the state department of health and pertaining to the examination given on October 4 and 5, 1934, for certificates to practice medicine in this state. It is worthy of note at this point that of the numbers on these envelopes none is followed by a letter, while the envelope which bears the appellant's name and upon the contents of which he relies as showing that he took and passed that examination and therefore received a valid certificate entitling him to practice medicine in this state is marked "2197-A". On each of the envelopes other than the one bearing the appellant's name the number is shown in large heavy figures, blueish green in color, all of the same size, and plainly not typewritten; while on the envelope bearing the appellant's name the number is in much smaller and less heavy figures and is plainly typewritten in black. To our minds these facts strongly indicate that the envelope in question had not been filed before or at the time of the examination of October 4 and 5, 1934, but had been filed at some time thereafter.

It is also noteworthy that in every one of these envelopes, except the one bearing the appellant's name, there is a receipt from the state treasurer's office showing the payment, into the state treasury by the applicant for a license, of $20 as a fee for taking the examination, while no such receipt is among the papers in the envelope bearing the appellant's name.

Among the statutory provisions which were then in force regulating the taking of examinations for certificates authorizing the practice of medicine in this state was one which required that any applicant presenting himself for exami-

nation shall present to the board of examiners "a receipt of the general treasurer that he has paid into the state treasury the sum of $20.00 as a fee for such examination, and said fee shall in no case be returned". G. L. 1938, chap. 275, §3, as amended by P. L. 1939, chap. 660, sec. 190. The appellant's testimony as to such fee was that before taking the examination he paid it to some employee in the office of the state board of health whom he did not and could not identify or describe and that he received no receipt therefor.

Doctor Round, who was the director of public health from September 1929 to March 1935, testified before us that the return of such a receipt to the department of health was a prerequisite that was never deviated from during his term of office. He also testified that he only gave out the blank examination books to those who showed receipts from the state treasurer.

Doctor Round also testified that during his term of office it was the custom and practice to give out in writing to certain newspapers, including the Providence Journal, the names of applicants who had passed an examination for certificates of authority for the practice of medicine and to check up on the names of those who were reported in these newspapers as having passed such examination, and to call any error to the attention of the newspapers so that it could be corrected. He stated, in substance and effect, that this practice was followed in connection with the successful candidates at this examination and that he did not recall that any error was found in any of the lists of successful candidates at the examination of October 4 and 5, 1934, published in any of these newspapers or that any of these papers was thus called up to make any correction.

A foundation having thus been laid for the introduction of such evidence, a witness was called who produced and read in evidence an article published in the issue of the Providence Journal for October 12, 1934. This contained a list of the names of nine persons who had successfully passed the examination of candidates on October 4 and 5, 1934 for

licenses to practice medicine in this state. The appellant's name was not in that list.

Burton W. Storrs, M. D., who at the time of the examination which the appellant asserts he took and passed on October 4 and 5, 1934, was a member of the state public health commission, testified that he gave the examination in one of the subjects and that the appellant did not take that examination.

The appellant's main reliance is upon certain papers which were inclosed in the manila envelope that is marked "State Cert. No. 2197-A Name Jacobson, Charles Date Issued 10-11-34". The most important of these papers is a document of four pages, on the back of which are the following items of consequence: "State Certificate No. 2197 A. Issued October 11, 1934 Rhode Island State Public Health Commission . . . Application of Charles Jacobson Application received Sept 3 1934 Fee received for examination . . . . 193. . . Appeared for examination Oct 4 1934 . . . Graduate from Middlesex 1932 Photograph received Sept 3 1934 Average per cent. obtained 81.5". These last figures have been put in with a lead pencil.

This so-called "Application" is in the same form as the applications that were filed in the other manila envelopes, above referred to, containing the applications and other papers of persons who admittedly passed the examination of October 4 and 5, 1934 and received licenses to practice medicine in this state. The purported application of the appellant shows, among other things, what purports to be a statement of the percentages at which his answers were rated by the examiners in the separate subjects. This statement bears the date "Oct. 11, 1934". At the end of the document is an unframed photograph of the appellant.

On the first inside page of this purported application Middlesex College of Medicine and Surgery is written in as the medical college from which the applicant had graduated; and on the line next below the date of graduation appears, written in ink with a pen, "June 15, 1932". But an inspec-

tion of the writing shows that the letters "une" in June, the figure "5" in the "15" and the figure "2" in the "1932" have been written in after the erasure of previous letters and figures. The appellant in his testimony admitted that he made these changes by the use of ink eradicator and said that he thought the original date was August 1933. This shows that he was familiar with the use of ink eradicator.

The envelope contains an original letter of February 26, 1937, from C. Ruggles Smith, registrar, of Middlesex College, Cambridge, Massachusetts, to Robert D. Wholey, chief of the division of examiners of this state. The only sentence of this letter which is pertinent in the instant case is as follows: "In reply to your inquiry of February 25, please be advised that Dr. Charles Jacobson was graduated with the degree of Doctor of Medicine from the Middlesex College of Medicine and Surgery on August 7, 1933."

This purported application by the appellant for a certificate to practice medicine includes a jurat bearing the signature and seal of Harry Greenspan, Notary Public, and stating that the application was signed and sworn to before him by Charles Jacobson on the "3d. day of Sept. A. D. 193 4", the open space between the 3 and the 4 being large enough for another figure. Greenspan testified before us that he could not recollect whether or not the date on which he took this acknowledgment was in 1934. Upon request he wrote a figure 4 on a sheet of paper which was kept as an exhibit. He later testified that there was an obvious difference between that 4 and the one that appeared in the jurat.

Later in the course of the hearing a witness, who was state toxicologist, testified as a witness for the board and qualified as an expert in restoring erased writing. He testified that he had a chemical which would restore such erased writing, if the ink in that writing contained iron.

Before us, at the request of the attorney for the board of examiners, he applied this test to the open space between the figures 3 and 4 in the year date in the jurat as contained

in the appellant's purported application for a license. As a result of this application a figure was brought into view which was clearly not a 4 and which was, or very closely resembled, a figure 5, and which the witness said had been removed by the use of a chemical ink eradicator.

When Greenspan was recalled, he testified that it looked like his 5 and he thought that he had written it. He also then testified that he had not used an eraser or ink eradicator to change the date he had written. The appellant himself admitted that there had evidently been a change made in the year date in the jurat, by the erasure of the fourth figure, which might have been an 8 but certainly had not been a 4, and that he did not know who had made the change. The evidence as to the date of the jurat, even if considered alone, makes it extremely improbable that the appellant's application was filed before the examination was given in October 1934.

Another important piece of evidence against the appellant is the exhibit marked "Ex. 21 State", which was introduced in evidence at the hearing before us. It is a photostatic copy of an application by the appellant to the board of registration in medicine of the Commonwealth of Massachusetts dated February 25, 1935, and signed by him. In that are the printed words "I am licensed to practice medicine as follows:" This is followed by a line for the answer to be written on and the instruction: "Give name of State and date of license." This was not filled in by the appellant, although it is extremely unlikely that he would not have filled it in with the name of Rhode Island and date of his license if he had previously received such a license from this state.

Samuel Nathans, M.D., who took and passed the examination for a license to practice medicine in this state which the appellant claims to have taken and passed, testified that the appellant was not present at, and did not take, that examination. He testified further that in 1940, a short time before a hearing was to be held in the sixth district court

on some criminal complaint growing out of this matter, this appellant and five other persons came to this witness's home in Hope Valley in this state; that the appellant then asked to talk with him privately and wanted to know if he would testify that the appellant had also taken that examination; and that he had very emphatically said that he would not.

The appellant did not deny that he first met Dr. Nathans in the fall of 1940 in the latter's home at Hope Valley, when the appellant and five other persons went there to call on him, a few days before he himself was to appear in the district court. He testified that he went into the private office to talk with Dr. Nathans and there asked him if he remembered the appellant being present at the examination which is involved in this case; and that Dr. Nathans said that he did not remember. The appellant denied practically all the rest of Dr. Nathan's testimony as to the conversation between them relating to the examination. After hearing the testimony of each of them we believe that of Dr. Nathans as against that of the appellant.

In the manila envelope, above mentioned, numbered 2197-A and purporting to contain the papers relating to the appellant's application is what purports to be a carbon copy of a letter dated October 11, 1934, addressed to the appellant and informing him that he had passed the examination in question and that his certificate would soon be made out and forwarded to him. At the bottom is a line for the signature, which is followed by "Ph.D." and under which is "Director of Public Health". It shows no copy of a signature. Doctor Round was the director of public health at the date on that purported copy of a letter and he testified that he wrote no such letter to the appellant.

It seems obvious to us that some employee of the department of public health or some other person having knowledge of its methods and access to its records must have cooperated with the appellant in preparing the papers upon which the latter mainly relies in this case and in causing the issuance to him of the so-called duplicate certificate;

137

but we see no good reason for going further into that phase of the matter, as it is not necessary to do so in order to establish the fraud of the appellant.

After carefully considering all the evidence in the case we find that the board has proved by credible evidence that the appellant did not take the examination of October 4 and 5, 1934; that no original certificate was issued to him; and that his so-called "Duplicate" certificate of authority to practice medicine in this state was obtained by him by fraud and should be revoked.

The finding of the board of examiners in medicine of the state of Rhode Island revoking the duplicate certificate of appellant authorizing him to practice medicine in this state is affirmed.

*John H. Nolan,* Attorney General, *A. Norman LaSalle,* Assistant Attorney General, for Board.

*Peter W. McKiernan,* for Charles Jacobson.